UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MELES ABREHA FETWI,

        Petitioner,

v.

KEVIN RAYCRAFT et al.,

        Respondents.

_____/

Case No. 1:26-cv-602

Honorable Hala Y. Jarbou

## OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## Discussion

### I.    Procedural History

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, accept jurisdiction over this action and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.7.)

In an order entered on February 26, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 4.) Respondents filed their response on March 3, 2026, (ECF No. 5). Petitioner did not file a reply.

## II.    Relevant Factual Background

"Petitioner is a native and citizen of Eritrea who was admitted to the United States at the Chicago O'Hare International Airport in Illinois on January 27, 2009, as a refugee." (Anderson Decl., ¶ 4, ECF No. 5-1, PageID.31.) "On May 10, 2010, [Petitioner] applied for a Form I-489, an Application to Register Permanent Residence or Adjust Status, through the United States Citizenship and Immigration Services (USCIS)." (*Id.*, at ¶ 5.) On March 31, 2011, the USCIS approved Petitioner's Form I-489 Application. (*Id.*, at ¶ 6.)

Between May 2013 and December 2021, Petitioner committed a variety of non-felony, petty offenses. Some of the offenses were committed while Petitioner was a juvenile. (Anderson Decl., ¶¶ 7–16, ECF No. 5-1, PageID.32–33.)

On November 15, 2022, ICE Enforcement and Removal Operations (ERO) arrested Petitioner and served him with a Form I-862, Notice to Appear, charging him with removability pursuant to §§ 237(a)(2)(A)(iii) and 237(a)(2)(C) of the Immigration and Nationality Act (INA). (Anderson Decl., ¶ 17. ECF No. 5-1, PageID.33.) On February 16, 2023, an immigration judge in Detroit Michigan ordered Petitioner removed to Eritrea. (Anderson Decl., ¶ 18, ECF No. 5-1, PageID.34.) Petitioner reserved appeal. (*Id.*) On March 20, 2023, the order of removal became final as no appeal was received by the Board of Immigration Appeals (BIA) from Petitioner. (*Id.*)

On August 15, 2023, ERO conducted a ninety-day post order custody review and served Petitioner with a release notification letter. (Anderson Decl., ¶ 20, ECF No. 5-1, PageID.34.) The following day, ERO released Petitioner from custody and placed him on an Order of Supervision because there was no significant likelihood of removal in the reasonably foreseeable future at the time. (*Id.*, at ¶ 21.)

After release on the Order of Supervision, Petitioner continued to commit petty offenses. On November 27, 2024, Petitioner was convicted of carrying a concealed weapon and punished as a habitual offender. (Anderson Decl., ¶ 22, ECF No. 5-1, PageID.34.) He was sentenced to 214 days of confinement and a $1,000 dollar fine. (*Id.*) On February 21, 2025, Petitioner was arrested for public intoxication and obstructing police. (*Id.*, at ¶ 23.)

On January 10, 2026, ERO arrested Petitioner for violating the conditions of his Order of Supervision. (Anderson Decl., ¶ 24, ECF No. 5-1, PageID.35.) On January 23, 2026, and again February 10, 2026, ERO provided documentation to Petitioner to complete regarding his Eritrea citizenship. (*Id.*, at ¶¶ 25–26.) Each time, Petitioner claimed that he did not know the necessary information to complete the documentation. (*Id.*)

On February 27, 2026, ERO served Petitioner with a Form 71-091, Notice of Revocation of Release, advising Petitioner that his release was revoked pursuant to 8 C.F.R. § 241.13(i). (Anderson Decl., ¶ 27, ECF No. 5-1, PageID.35; Notice of Revocation, ECF No. 5-2, PageID.38– 39.) Petitioner's release was revoked because Petitioner violated the conditions of his release by failing to report to ERO as ordered on August 16, 2023, and for his multiple arrests and/or convictions following his prior release. (*Id.*)

## III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

**IV.      Merits Discussion**

Given that Petitioner has a final order of removal, Petitioner's present detention is governed by 8 U.S.C. § 1231. Petitioner, however, contends that his detention is unlawful. (Pet., ECF No. 1, PageID.6–7.) In response, Respondents argue that Petitioner's continued "detention under 8 U.S.C. § 1231(a) remains lawful and does not implicate the constitutional concerns identified in *Zadvydas v. Davis* 533 U.S. 678, 701 (2001)." (Response, ECF No. 5, PageID.19–20.)

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Here, as noted above, Petitioner's order of deportation became final on March 20, 2023. (Anderson Decl., ¶ 18, ECF No. 5-1, PageID.34.) The 90-day removal period following the order expired well before Petitioner filed the present action. *See id.* § 1231(a)(1) ("The [90-day] removal period begins on . . . [t]he date the order of removal becomes administratively final.").

In *Zadvydas v. Davis*, the Supreme Court held that after expiration of the 90-day removal period, the Government may continue to detain the noncitizen for a "presumptively reasonable period" of time, which the Supreme Court concluded equaled six months. *See Zadvydas*, 533 U.S. at 701. Following that six-month period, "once [a noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*[1] "[O]nce [a noncitizen's] removal

---

[1] The Court notes that the Supreme Court recently held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573,

is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

"Although the Supreme Court established a six-month period of presumptively reasonable detention," courts have found that *Zadvydas* does "not preclude a detainee from challenging the reasonableness of his detention before such time." *See, e.g.*, *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395–96 (D.N.J. 2025) (citing, *inter alia*, *Zadvydas*, 533 U.S. at 699–701; *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 706–07 (S.D. Tex. 2020); *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018)). That is, during the six-month period of detention, "[t]he presumption of reasonableness is the default," and "the government bears no burden to justify detention," "but if a person 'can prove' that his removal is not reasonably foreseeable, then he can overcome that presumption." *Id.* at 397 (citations omitted).

Here, Petitioner was taken into custody by ERO on January 10, 2026. (Anderson Decl., ¶ 21, ECF No. 5-1, PageID.35.) Petitioner initiated this action on February 23, 2026. Respondents argue that at the time that Petitioner filed his § 2241 petition, he had not been detained for six months. Respondents contend that a petitioner must have been in ICE custody for six months on the date the petition is filed, citing *Zadvydas*, 533 U.S. at 700-01. Petitioner has not, as of this date, reached the end of the presumptively reasonable period of detention.[2] Given that Petitioner's detention has not reached six months in length, his request for relief is not yet ripe for judicial review—unless he can show that his removal is not reasonably foreseeable. Based on the record before the Court, however, the Court concludes that Petitioner has not shown that his removal is

---

576 (2022). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

[2] Petitioner falls short even adding his post-removal period detention during the summer of 2023. (Resp., ECF No. 5, PageID.21.)

not reasonably foreseeable. Indeed, the record also reflects that ERO is actively seeking travel documents to effect Petitioner's removal to Eritrea. (Anderson Decl., ¶ 27, ECF No. 5-1, PageID.35.)

## V.    Other Claims and Other Forms of Relief

Because Petitioner's § 2241 petition is not ripe, the Court does not address the other claims and other requested relief in Petitioner's § 2241 petition.

## VI.    Proper Respondents

Respondents argue that the Detroit ICE Field Office Director is the only proper Respondent in this action, and they seek the dismissal of all of the other named Respondents. The Court concludes that the Detroit ICE Field Office Director is not the only proper Respondent for the reasons set forth in the Court's analysis of the same argument in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *8–9 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *8–9 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *9–10 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *9–10 (W.D. Mich. Dec. 12, 2025).

To ensure that this Court's orders will bind at least one Respondent with authority to act in the event that Petitioner is transferred out of the Western District of Michigan, the Court will retain the Detroit ICE Field Office Director and the Acting Secretary for the Department of Homeland Security as Respondents. The Court will dismiss the United States Attorney General as a Respondent.

6

## **Conclusion**

For the reasons discussed above, the Court will enter a judgment denying Petitioner's

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, without prejudice, as premature.

(ECF No. 1.) Further, the Court will dismiss the United States Attorney General as a Respondent.


Dated: March 18, 2026                                    /s/ Hala Y. Jarbou
                                                          HALA Y. JARBOU
                                                          CHIEF UNITED STATES DISTRICT JUDGE